# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

GRINNELL MUTUAL REINSURANCE
COMPANY,

                      Plaintiff,

v.

GENE WENDLAND,

                      Defendant.

Civil No. 14-721 (JRT/LIB)

**MEMORANDUM OPINION
AND ORDER GRANTING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

---

Ken D. Schueler, **DUNLAP & SEEGER**, Post Office Box 549, Rochester, MN 55903, for plaintiff.

Casey W. Fideler, **CHRISTOPHERSON, ANDERSON, PAULSON & FIDELER, LLP**, 509 South Dakota Avenue, Sioux Falls, SD 57104, for defendant.

Plaintiff Grinnell Mutual Reinsurance Company ("Grinnell") brought this action in federal court, seeking a declaratory judgment that Grinnell does not have a duty or obligation to defend or indemnify Bryan Shelstad, Randy Shelstad, Dennis Shelstad, Renee Shelstad, and the Shelstad Farm Partnership ("the farm partnership") with respect to claims arising out of a 2010 motor vehicle accident involving Bryan Shelstad. The underlying action is a state law, personal injury claim. Bryan Shelstad worked for his uncles, Randy and Dennis Shelstad, as a farmhand. On November 25, 2010, Bryan[1] had finished feeding animals at the farm, and was driving to a milking facility on the other end of the farm. His route crossed an intersection with U.S. Highway 12. Bryan drove

---

[1] The Court will refer to members of the Shelstad family by their first names.

into the intersection and crashed into another vehicle, sending that vehicle rolling into a ditch.

Defendant Gene Wendland ("Wendland"), the driver of the vehicle that Bryan hit, sustained serious injuries. Wendland brought suit against Bryan in state court, with Randy, Dennis, Renee, and the farm partnership as co-defendants. That suit was partially settled when Bryan's vehicle liability insurer agreed to pay Wendland the maximum allowed under Bryan's policy. Wendland executed a *Pierringer* release with regard to Bryan. Such a release permits a plaintiff (i.e., Wendland) to settle with one of multiple defendants in a tort action (in this instance, Bryan), while reserving a claim against other tortfeasors. Wendland also entered into a *Miller-Shugart* agreement with Randy and Dennis, under which Randy and Dennis consented to a judgment for Wendland, but agreed that any damages should be paid by their insurance policy. However, Grinnell – Randy and Dennis's insurer and the plaintiff in this action – seeks a declaratory judgment that it is not liable under the *Miller-Shugart* agreement. Grinnell now moves for summary judgment. Because the *Miller-Shugart* agreement is not enforceable against Grinnell, and because Bryan was not eligible for coverage under the policy for this accident, the Court will grant the summary judgment motion.

## BACKGROUND

## I.    FACTUAL BACKGROUND

Brothers Randy and Dennis Shelstad have run their parents' farming operation, largely consisting of milk cows and crops, since the mid-1990s. (Aff. of Ken D. Schueler

("Schueler Aff."), Ex. B (Randy Shelstad Dep.) at 4, Feb. 13, 2015, Docket No. 30.)  The brothers' nephews, including Bryan Shelstad, began working on the farm – milking, tending, and feeding cows and doing other farm chores – from the early 2000s through 2012.  (*Id.* at 12-13.)  The nephews received roughly $4,000 per month and appear to have been paid as independent contractors.[2]  (*Id.* at 16-17.)  Bryan would milk cows from 7:00am to 9:30am, then mix up feed for the cows, and end the day by feeding cows at Randy Shelstad's other property, a half mile north of the main milking facility.  (*Id.* at 39-44.)  He would stop at that property on his way home to Ortonville at the end of the day.  (*Id.* at 44.)

On November 25, 2010, Bryan finished up work at Randy's northern property, but returned to the main facility – varying from his standard pattern – to finish up some work with the cattle at the main facility.  (Schueler Aff., Ex. A (Bryan Shelstad Dep.) at 51-52, 55; Schueler Aff, Ex. F (Def.'s Answers to Pl.'s Req. for Admis.).)  While driving to the main facility, Bryan drove through the intersection of County Road 77 in Big Stone County and U.S. Highway 12, negligently colliding with a vehicle being driven by Gene Wendland.  (Schueler Aff., Ex. A at 59-61; Am. Compl., Ex. A at 2; Mar. 31, 2014, Docket No. 4.)  Wendland suffered serious injuries.  (Am. Compl., Ex. A at 3.)  The accident did not occur on premises owned by Randy or Dennis.

---

[2] Wendland notes that Randy and Dennis did not discuss Bryan's status as an independent contractor in their depositions, that they appeared to think of him as an employee, and that they paid for all expenses and insurance related to the farm at which Bryan worked.  (Wendland's Mem. of Law in Opp'n to Mot. for Summ. J. ("Wendland Mem.") at 2-3, Mar. 6, 2015, Docket No. 33.)

At the time of the accident, Randy and Dennis had a Grinnell farm liability policy, which listed Bryan as an "additional named insured (limited)."  (Schueler Aff., Ex. C (John Terpstra Dep. ("Terpstra Dep.")) at 52, 57, 78; *see also* Terpstra Dep., Ex. 1 at 41.) That policy did not cover motor vehicle liability "unless at the time of the 'occurrence' the involved 'motor vehicle' is . . . [b]eing used by a 'farm employee' in the course of any 'insured's' 'farming' operations and not owned by any 'insured.'"  (Terpstra Dep., Ex. 2 at 53.)  "Insured" under the policy means "[t]he Named Insured shown in the Declarations and, if the Named Insured is an individual, the spouse if living in the same household" and "[a]ny Additional Named Insured shown in the Declarations, and, if the Additional Named Insured is an individual, the spouse if living in the same household." (*Id.* at 46, 48.)

Grinnell believed these provisions barred coverage for Randy and Dennis for Bryan's accident.  It determined there was no coverage under the farm liability policy for Bryan because (1) Bryan was an independent contractor and not an employee; (2) Bryan was done working for the day at the time of the accident and it thus did not occur in the course of his employment; and (3) Bryan was the owner of the vehicle.  (Terpstra Dep. at 76-78.)  In early 2012, Grinnell sent multiple letters to Randy and Dennis, indicating that there was no coverage for Bryan's accident and that they would not be defending or indemnifying Randy and Dennis for it.  (Aff. of Casey W. Fideler ("Fideler Aff."), Ex. G, Mar. 6, 2015, Docket No. 34.)

## II.     PROCEDURAL HISTORY

On February 13, 2012, Wendland filed a complaint in state court against Bryan, alleging negligence in the accident, along with an employer vicarious liability claim against Randy and Randy's wife.  (Am. Compl., Ex. A at 3-4.)  Wendland then filed an amended complaint in March that added the farm partnership and Dennis as defendants. (*Id.* at 7-8.)  Bryan eventually reached an agreement with Wendland to settle for the amount of $100,000; the amount Wendland received from Bryan's North Star Mutual Insurance policy.   That settlement was memorialized in a *Pierringer* release and settlement agreement, *see generally Frey v. Snelgrove*, 269 N.W.2d 918, 923 (Minn. 1978); *Pierringer v. Hoger*, 124 N.W.2d 106 (Wis. 1963), signed on December 2, 2013. (Schueler Aff., Ex. E (Dep. of Gene Wendland ("Wendland Dep.")), Ex. 1 at 81-84.)  In the release, Wendland released all claims against Bryan and agreed to hold him harmless and indemnify him for any other related claims from other entities or parties.  (*Id.* at 81.) The agreement also expressly reserved Wendland's claims against any vicariously liable parties (e.g., Randy and Dennis).

Prior to signing the *Pierringer* release, and with a summary judgment hearing on Bryan's employment status imminent and a trial pending, Wendland also signed a *Miller-Shugart* agreement with Randy and Dennis.  *See Vang v. Vang*, 490 N.W.2d 647, 650-51 (Minn. Ct. App. 1992) (explaining the difference between a *Miller-Shugart* agreement and *Pierringer* release); *see generally Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982). In it, the parties agreed to a judgment being entered against Randy and Dennis of $520,000; that sum was in addition to the other damages Wendland had or would receive:

$40,000 from his own no-fault benefits, $100,000 from Bryan's insurance, and $130,000 in personal contributions from Randy and Dennis. (Am. Compl., Ex. B.) Since Grinnell had refused to defend or indemnify Randy and Dennis, that agreement gave Wendland the opportunity to pursue Randy and Dennis's indemnification claims against Grinnell (i.e., the agreement assigned Randy and Dennis's claims to Wendland). (*Id.* at 4-8, 10.) In it, Wendland also committed not to pursue further his claims against Randy and Dennis personally, but instead to seek damages only from Grinnell. (*Id.*) The agreement was signed on November 26, 2013 and the state court approved it on March 26, 2014. (*Id.* at 9; Am. Compl., Ex. C.) The state court awarded Wendland $520,000 in damages against Randy and Dennis, to be pursued via an action against Grinnell. (Am. Compl., Ex. C.)

Grinnell then commenced this action in federal court on March 13, 2014, seeking a declaratory judgment that Grinnell owes no duty to defend or indemnify Randy and Dennis, and that the *Miller-Shugart* agreement has no force or effect. (Am. Compl. at 5.) Grinnell filed this motion for summary judgment on February 13, 2015. (Mot for Summ. J. by Grinnell, Feb. 13, 2015, Docket No. 26.)

## DISCUSSION

## I.   STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit,

and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.   VALIDITY OF *MILLER-SHUGART* AGREEMENT

Grinnell's first argument in favor of summary judgment is that the state court judgment adopting the *Miller-Shugart* agreement is not enforceable against Grinnell. Grinnell's reasoning is as follows: the *Miller-Shugart* agreement allowed Wendland to step into the shoes of Randy and Dennis only as to their potential indemnification claims against Grinnell. (Am. Compl., Ex. B at 10.) Grinnell's duty to defend and indemnify Randy and Dennis, however, ceased to exist when Wendland released all claims against Bryan in the *Pierringer* release because the claims against Randy and Dennis were solely based on their vicarious liability as employers. Once the claims against Bryan were released – and irrespective of any language in the *Pierringer* release attempting to reserve claims against vicariously liable parties – so too were any claims against the vicariously liable Randy and Dennis. *See, e.g.*, *Kellen v. Mathias*, 519 N.W.2d 218, 222 (Minn. Ct. App. 1994) ("Although the plaintiff may sue and collect the full amount from either defendant, the vicariously liable defendant has full rights of indemnification against the actively negligent party. Because the [*Pierringer*] settlement cannot prejudice the

nonsettling party, a settlement cannot alter the indemnification rights of a nonsettling defendant who is only vicariously liable.  Thus . . . a release of the actively negligent party also releases the vicariously liable party." (citation omitted)).[3]  Consequently, Grinnell's duty to defend was also eliminated, since no claims against Randy and Dennis exist to defend, and Wendland has no claim against Grinnell.

Although the Court finds no case that is exactly on point,[4] the Court concludes that the general case law on *Pierringer* releases and on the impact on vicarious liability of releasing an agent demonstrates that, in this case, the existence of the *Pierringer* release renders the *Miller-Shugart* agreement unenforceable against Grinnell.  *See, e.g.*, *Pischke*

---

[3] *See also Hoffmann v. Wiltscheck*, 411 N.W.2d 923, 926 & n.3 (Minn. Ct. App. 1987) ("Since first used in Minnesota, it has been recognized that the *Pierringer* release poses the definite hazard that the claimant who uses the release with indemnification 'bars himself' from collecting on an award he might otherwise obtain against a nonsettling tortfeasor who has vicarious liability based on negligence of the settling tortfeasor."); *Booth v. Gades*, 788 N.W.2d 701, 707-10 & n.8 (Minn. 2010) (reaffirming the common law rule "that the release of the agent releases the principal from vicarious liability" and declining to consider whether a *Pierringer* release could expressly reserve claims against vicariously liable principals); *Thompson v. Brule*, 37 F.3d 1297, 1299-1300 (8th Cir. 1994) (stating that "[i]t is well established that the release of an agent pursuant to a *Pierringer* release extinguishes any claims of vicarious liability against the principal for the acts of his agent" and noting that a *Pierringer* release must contain a provision in which the settling claimant agrees to indemnify the settling tortfeasor, otherwise the agreement does not completely relieve the tortfeasor of liability).

[4] One case appears at first blush to be similar.  *See Wildman v. K-Mart Corp.*, 556 N.W.2d 10, 13-14 (Minn. Ct. App. 1996).  That case affirmed a state trial court's conclusion that "the *Pierringer* release of one defendant did not operate to release the putative insurer of a nonsettling defendant."  *Id.*  But the key distinction is that that case involved an argument that a *Pierringer* release protected a co-tortfeasor both from vicarious or imputed liability **and** from that tortfeasor's **independent** liability.  *Id.*  The court noted that the co-tortfeasor had been expressly released from imputed liability in the *Pierringer* release.  *Id.* at 13 n. 3.  The independent liability was separate and the claimant could pursue it against the insurer, due to the *Miller-Shugart* agreement she signed with the co-tortfeasor.  *Id.*  Consequently, *Wildman* is not relevant because it does not involve the same relationship between agreements as in this case (i.e., claimant seeks recovery from insurer for its duty to indemnify employer who is liable only vicariously for tortfeasor's wrongdoing, even though claims against tortfeasor have been released by *Pierringer* agreement).

*v. Kellen*, 384 N.W.2d 201, 205 (Minn. Ct. App. 1986).  Irrespective of the timing of when the agreements were signed,[5] or of Wendland's gloss on the parties' intent in signing them, the fact remains that Randy and Dennis's liability to Wendland is solely by way of their vicarious-liability relationship to Bryan.  By signing the *Pierringer* release, Wendland released Bryan from liability and, in turn, released from liability Randy and Dennis.  That release invalidates a *Miller-Shugart* agreement that includes a judgment against Randy and Dennis, since the liability of their agent – and thus the basis of any liability against them – has been released.  Because the judgment against Randy and Dennis was invalidated, so too is any indemnification claim against Grinnell.  In sum, the Court concludes that the *Pierringer* release renders unenforceable the *Miller-Shugart* agreement and related judgment against Grinnell.  As a result, the Court will not reach the parties' dispute over the reasonableness of the *Miller-Shugart* agreement.

## III.    INSURANCE POLICY'S APPLICABILITY TO THE ACCIDENT

Grinnell also argues, in the alternative, that it is entitled to summary judgment because the language of its insurance policy bars coverage for the accident in this case.  Specifically, the policy does not cover motor vehicle liability "unless at the time of the 'occurrence' the involved 'motor vehicle' is . . . [b]eing used by a 'farm employee' in the course of any 'insured's' 'farming' operations and not owned by any 'insured.'" (Terpstra Dep., Ex. 2 at 53.)  "Insured" under the policy means "[t]he Named Insured

---

[5] To the extent Wendland relies on the order of the agreements to demonstrate the intent of the parties, it is telling that the earlier *Miller-Shugart* agreement explicitly forecasts the $100,000 Bryan will pay under his insurance policy (i.e., the *Pierringer* release).  (Am. Compl., Ex. B at 6.)

shown in the Declarations and, if the Named Insured is an individual, the spouse if living in the same household" and "[a]ny Additional Named Insured shown in the Declarations and, if the Additional Named Insured is an individual, the spouse if living in the same household." (*Id.* at 46, 48.)

Grinnell previously found and now argues on summary judgment that there was no coverage under the farm liability policy for Bryan because (1) Bryan was an independent contractor and not an employee; (2) Bryan was done working for the day at the time of the accident and it thus did not occur in the course of his employment; and (3) Bryan was an "insured" and the owner of the vehicle. (Terpstra Dep. at 76-78.); *see Auto-Owners Ins. Co. v. Todd*, 547 N.W.2d 696, 698 (Minn. 1996) (stating that the insurer bears the burden of showing that "all parts of the cause of action fall clearly outside the scope of coverage").

The parties mainly debate the third ground: whether Bryan was an "insured" driving his own vehicle, and therefore barred from coverage. The parties do not appear to dispute that Bryan was driving his own car; the key question is whether Bryan was an "insured" within the scope of that exclusion. Grinnell argues that Bryan was an "insured," pointing to the plain language of the policy. *Minnesota Prop. Ins. v. Slater*, 673 N.W.2d 194, 196 (Minn. Ct. App. 2004) ("Provisions in an insurance policy are interpreted according to their plain meaning, consistent with what a reasonable person in the insured's position would have understood the words to mean.").

Wendland counters that Bryan is not an "insured" within the meaning of the exclusion and is instead just the sort of farm employee Randy and Dennis would hope to

cover with their farm policy, even for motor vehicle accidents.  *See Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.,* 825 N.W.2d 695, 704 (Minn. 2013) (stating that a court's objective, in interpreting a contract, is to "ascertain and give effect to the intentions of the parities as reflected in the terms of the insuring contract").  Wendland's primary argument is that, in the declarations page of the policy, Bryan is described as an "additional named insured **(limited)**" and is therefore different than the term "additional named insured" as listed in the definition of "insured."  Wendland points to the language of the policy and to information gleaned in discovery to support this argument.  He notes that the policy contains a provision that makes the "insured" a member of the Grinnell company with voting power and that Bryan clearly was never given this power.  (Terpstra Dep., Ex. 2 at 61.)  He also notes that the policy's first endorsement seems to lay out more limited protections for a limited-type insured like Bryan.  (*Id.* at 62.)  Finally, he points to record documents – namely applications to change Randy and Dennis's insurance policy – that implicitly note a difference between limited insureds and standard "additional named insureds."  (Fideler Aff., Ex. U.)  At a minimum, Wendland argues the term is ambiguous and, as a result, it should be construed against the drafting insurance company.  *Jenoff, Inc. v. N.H. Ins. Co.*, 558 N.W.2d 260, 262 (Minn. 1997) (noting that courts resolve ambiguities in contract language against the insurer); *State Farm Fire & Cas. Co. v. ARC Mfg., Inc.*, 11 F. Supp. 3d 898, 904 (D. Minn. 2014) ("When an insurer fails to define a coverage term, it is not entitled to a strict or limited definition that differs from the ordinary definition in order to avoid providing coverage.").

The Court is not persuaded by Wendland's arguments and finds that Bryan was an "insured" who is ineligible for coverage in this case.  The plain language of the contract, in its definitions section, states that "you" or "insured" is "**[a]ny** Additional Named Insured shown in the Declarations."  (Terpstra Dep., Ex. 2 at 46 (emphasis added).)  In other words, despite Wendland's attempt to distinguish an "additional named insured" from an "additional named insured (limited)" and to label the latter term ambiguous, the clear and plain language of the contract defines "insured" broadly, as **any** additional insured that happens to be listed in the policy's declarations.  Here, Bryan is indisputably an additional named insured, albeit a "limited" one, listed in the policy's declarations.  As a result, under the plain language of the policy, Bryan is ineligible for coverage in this case.  In sum, because the Court finds for Grinnell on both of its arguments, it will grant Grinnell's motion for summary judgment.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Grinnell's Motion for Summary Judgment [Docket No. 26] is **GRANTED**.

## LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  September 30, 2015
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____
JOHN R. TUNHEIM
Chief Judge
United States District Court